IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE

| | | |
|---|---|---|
| ANNE-MARIE NEWBOLD, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:14-cv-00733-DJH |
| | ) | |
| PARKER WAICHMAN LLP and JOHN DOES 1-10, | ) ) | Memorandum of Law in support of Motion to Dismiss and to Strike |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6) AND TO STRIKE "NATIONAL DO NOT CALL" CLASS PURSUANT TO RULE 12(F)**

Defendant, Parker Waichman LLP ("PW"), by counsel, submits its Memorandum of Law in support of its Motion to Dismiss Plaintiff's First Amended Complaint ("Complaint") pursuant to Rule 12(b)(6) and to Strike the "National Do Not Call Class" pursuant to Rule 12(f):

**INTRODUCTION**

Plaintiff's action alleges that PW made telephone calls to Plaintiff's cell phone concerning the provision of legal services relating to injuries suffered by Plaintiff after taking prescription medication(s) relating to birth control. Plaintiff concedes that the calls were made only after she completed an on-line form confirming that she had been injured by taking such drugs and was interested in securing information about her rights. *See* Dkt. #39 at ¶¶3.3, 3.4. The calls that Plaintiff alleges PW made to her cell phone were to have occurred between November 28, 2013, and December 6, 2013. *Id.* PW is law firm that prosecutes class actions in the areas of defective drugs, medical devices, medical malpractice, nursing home injuries and

products liability. *Id.* ¶1.2. Plaintiff's claim is that the alleged telephone calls violate the Telephone Consumer Protection Act of 1991 ("TCPA" or "the Act").

In the First Claim ("Count I"), Plaintiff alleges calls were made to her cell phone using an automatic telephone dialing system ("ATDS") and/or an artificial or prerecorded voice in violation of § 227(b)(1)(A) of the Act. *Id.* at ¶4.2. In the Second Claim ("Count II"), Plaintiff specifies that three telephone calls and two text messages violated § 227(c) of the Act because they were made to her cell phone within a 12 month period while that number was registered on the National Do-Not-Call Registry ("the Registry"). *Id.* at ¶5.2. Ten "John Does" are also included as putative defendants, defined as "law firms, lead finders, marketing agents and/or telemarketers." Plaintiff then alleges the presence of a "National Cell Phone" class under § 227(b)(1)(A) and a "National Do-Not-Call" ("DNC") class under § 227(c) of the Act. *Id.* at ¶¶ 1.2, 6.2.

## SUMMARY OF THE ARGUMENT

Plaintiff fails to allege facts, that if true, would state a claim under the TCPA as against PW under either § 227(b)(1)(A) or § 227(c) of the Act. The specific factual allegations of the Complaint, as they relate to PW, concern calls made calls to her Plaintiff's cell phone between November 28, 2013, and December 6, 2013, and only after Plaintiff accessed a website and voluntarily completed a form regarding injuries resulting from taking "Yaz®,"[1] a brand name for the drug Drospirenone/Ethinyl Estradiol as made by Bayer. The Complaint admits that Plaintiff filled out the inquiry from using an alias, *viz.* "Gina Lola." Dkt. #39 at ¶¶3.2-3.4. The text

---

[1] "Yaz" is a short-hand reference to prescription drugs containing a synthetic hormone used primarily in birth control pills and postmenopausal hormone replacement therapy. It is also used to treat moderate acne, among other uses. The term is derived from some of the more common brand names such as "Yasmine®", "Yaxminelle®" and "Yaz®". *See* generally, http://www.drugs.com/yasmine.html.

messages and cell phone calls described in the Complaint, however, <u>are not alleged to have been made, generated, or initiated by PW</u>. *Id.* at ¶¶3.1, 3.2, 3.5. Consequently, the allegations in paragraphs 3.1, 3.2, and 3.5 of the Complaint are subject to dismissal as against PW.

In addition, Count I is also subject to dismissal because Plaintiff *never specifies* or alleges <u>the cell phone number</u> to which anyone, much less PW, was to have made the violative calls in violation of § 227(b)(1)(a). *Id.* at ¶4.2. Finally, Count I is subject to dismissal as a matter of law because the Complaint admits that Plaintiff provided consent for the phone calls alleged to have been made by PW made to her cell phone when she sought out, filled in and submitted the Yaz® injury intake form.

By the same token, Count II of the Complaint is subject to dismissal because Plaintiff does not allege what cell phone number was registered with the national DNC registry or, if registered, when that registration took place, an essential element for a § 227(c) claim under the Act. Furthermore, Count II is subject to dismissal as a matter of law as the established business relationship ("EBR") exception applies to the calls Plaintiff alleges PW made to her cell phone. *See* 47 C.F.R. § 64.1200(f)(5). Finally, there is no private right of action under the TCPA or the regulations for telephone solicitation to cell phone numbers registered with the national DNC registry. Ultimately, Plaintiff's attempted DNC class must be stricken pursuant to Rule 12(f) because it is an impermissible, fail-safe class.

### SUMMARY OF COMPLAINT'S RELEVANT FACTS

Plaintiff allegedly received two text messages in November 2013 from what she describes only as "Defendants" to her cell phone inquiring if she was injured by using "Yaz®." Dkt. #39 at ¶¶3.1-3.2. Plaintiff wanted to find out who was texting her, so she answered the November 26, 2013 text with the word "Yaz®." *Id.* at ¶3.2. Plaintiff then went to a website, found a form regarding Yaz®-related injuries, and completed the form using fictional

3

information and the alias "Gina Lola." Plaintiff claimed that she suffered a deep vein thrombosis injury while taking Yaz®. *Id*. at ¶¶3.2-3.3.

On November 28, 2013, Plaintiff received two calls to her cell phone. She answered the second that was allegedly from a PW attorney encouraging her to retain PW in connection with her Yaz® injuries. *Id*. at ¶3.3. On November 29, 2013, PW e-mailed Plaintiff a fee agreement. *Id*. at ¶3.4. Between November 29, 2013, and December 6, 2013, Plaintiff received three calls on her cell phone from PW about representing her related to her injuries. On December 6, 2013, PW sent Plaintiff a letter stating it would not represent her. *Id*. at ¶3.4. In April 2013, unspecified "Defendants" called Plaintiff's cell phone with pre-recorded messages about Yaz® and other drugs. *Id*. at ¶3.5.

## LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss, a court "must construe the complaint in the light most favorable to the plaintiff," *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true[,]" (*id*.), and determine whether the "complaint states a plausible claim for relief[,]" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, while a court must accept a complaint's allegations as true, this is only so for factual allegations. The Rules do not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. Thus, to survive a motion to dismiss, a complaint must consist of more than "an unadorned, the defendant-unlawfully-harmed-me accusation." *Id*. at 678. A complaint should be dismissed where the plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Hensley Mfg. v. Propride, Inc*., 579 F.3d 603, 609 (6th Cir. 2009) (the Rules "require more than 'labels and conclusions' or

'a formulaic recitation of the elements of a cause of action.'") (quoting *Twombly*, 550 U.S. at 555).

A court considering a motion to dismiss must distinguish "factual matter" from "legal conclusion[s] couched as a factual allegation[s]." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). While well-pleaded facts are entitled to a presumption of truth, a court need not accept as true "conclusory statements" or "threadbare recitals of the elements of a cause of action." *Id.*; *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005) (citations omitted).

## ARGUMENT

**I.   The Complaint is subject to dismissal because it fails to allege that PW made, initiated, generated, or authorized the alleged text messages received in November 2013 or the alleged cell phone calls made in April 2013.**

Plaintiff alleges that unspecified "Defendants" sent her two text messages in November 2013 and called her cell phone three times in April 2013 as follows:

> "3.1   On November 11, 2013, Defendants sent a text message to Plaintiff's cellular telephone which was received by Plaintiff Newbold."
>
> "3.2   On November 26, 2013, Defendants sent a text message to Plaintiff's cellular telephone which was received by Plaintiff Newbold."
>
> "3.5   On April 13, 2013, Defendants placed a call to Plaintiff's cellular telephone that Plaintiff answered…..During April, 2013, Plaintiff received two other similar or identical pre-recorded telephone calls from Defendant on her cellular telephone."

Dkt. #39 at ¶¶3.1-3.2, 3.5.  PW is <u>not</u> alleged to have made, initiated, or generated <u>any</u> of these calls or texts.  Therefore PW cannot be held liable for these calls or texts under the TCPA.  Nor does Plaintiff allege that there are facts that, if true, demonstrate that  PW authorized such texts or calls. *Keating v. Peterson's Nelnet, LLC, et al.,* No. 1:11-cv-1775, 2014 WL 1891369, *5 (N.D.Ohio May 12, 2104) (defendants did not authorize text messages and thus no TCPA liability; vicariously liability requires that  agent's conduct be actually authorized) (citing *Jones*

5

*v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 965 (6th Cir. 1998); *Thomas v. Taco Bell Corp.*, 879 F.Supp.2d 1079, 1084-1085 (C.D. Cal. 2012)(applying agency principles to analyze vicarious liability under TCPA). TCPA complaints have been routinely dismissed for failure to plead agency. *See Smith v. State Farm Mut. Auto. Ins. Co.*, No. 13cv2018, 2013 WL 5346430, at *1-6 (N.D. Ill. Sept. 23, 2013)(motion to dismiss granted holding plaintiff "has failed to sufficiently allege facts to support vicarious liability under §227(b)"); *Taco Bell Corp.*, 879 F.Supp.2d at 1084 (defendant not vicariously liable for TCPA violation where plaintiff failed to show defendant had right to, and manner and means to, control text message campaign at issue); *Friedman v. Massage Envy Franchising, LLC*, No. 3:12cv02962, 2013 WL 3026641, at *3-5 (S.D. Cal. June 13, 2013)(TCPA complaint dismissed finding facts supporting agency allegations not plead); *See also*, *Mey v. Pinnacle Sec., LLC*, No. 5:11-cv-47, 2012 WL 4009718, at *5-6 (N.D. W.Va. Sept. 12, 2012)(defendant not held vicariously liable because it had "little to no control over the means or manner by which these companies generate sales leads," and played a "passive role" in alleged TCPA violation); *Ritter v. BJC Barnes Jewish Christian Health Sys.*, 987 S.W.2d 377, 385-386 (Mo. Ct. App. 1999)(rejecting plaintiff's vicarious liability theory).

Necessarily, paragraphs 3.1, 3.2, 3.5, 4.2, and 5.2 of the Complaint should be dismissed because Plaintiff cannot lump PW together with unidentified and undifferentiated "Defendants" to create liability under the Act as against PW. The Complaint names PW and ten unknown "John Does" as defendants. Dkt. 39 at ¶¶1.2-1.3. Paragraphs 3.1, 3.2, and 3.5 allege claims revolving about these "Defendants." In paragraphs 4.2 and 5.2, Plaintiff alleges that the anonymous "Defendants" violated § 227b and § 227c of the Act. *Id.* at ¶¶ 4.2 and 5.2. When a complaint involves multiple parties and claims, as is the case here, a plaintiff must clearly explain *which* defendants are alleged to have committed *which* alleged wrong(s). *See Marcilis v.*

6

*Twp. of Redford,* 693 F.3d 589, 605 (6th Cir. 2012)("lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct fails to satisfy [the] minimum standard that a complaint give each defendant fair notice of what the plaintiffs claim is and the ground upon which it rests[.]" (citations omitted)); *Hess v. City of Huber Heights, et al.*, No. 3:13-cv-312, 2014 WL 3341346 *3 (S.D.Ohio July 8, 2014)(Rule 12(b)(6) motion to dismiss granted based on failure to sufficiently complain of specific conduct on the part of any identified defendant in violation of Rule 8); *Wong v. Bann-Cor Mortg.*, No. 10-cv-1038, 2011 WL 2314198, at *12 (W.D. Mo. June 9, 2011) ("lumping [] all defendants together into one category results in the reader being unable to determine the exact theory of liability as to each separate defendant"). If defendants are simply lumped together when they are alleged to be distinct entities, like in this case, no single defendant, identified or anonymous, has any notice of the precise nature of the claims made against it. *Bentley v. Bank of Am., N.A.*, 773 F.Supp.2d 1367, 1374-1375 (S.D. Fla. 2011). Such an error is so patent and it creates grounds for dismissal. Thus paragraphs 3.1, 3.2, 3.5, 4.2, and 5.2 should be dismissed. *Cellco P'ship v. Plaza Resorts Inc.*, No. 12-81238-CIV, 2013 WL 5436553, at *6-7 (S.D. Fla. Sept. 27, 2013).

**II.　Count I should be dismissed because Plaintiff fails to allege the cell phone number Plaintiff claims PW called; if called, Plaintiff consented to the calls alleged to have been made, requiring dismissal of such a claim as a matter of law.**

Plaintiff invokes § 227(b)(1)(A) of the TCPA which prohibits, among other things, making calls to cell phones using an automatic telephone dialing system, *except* when the called party has *consented* to receive such calls. Section 227(b)(1)(A) provides as follows:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

> …
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

See 47 U.S.C. § 227(b)(1)(A)(iii). It is Plaintiff's claim that certain of the "Defendants" violated § 227(b)(1)(A) by "making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff … using an ATDS and/or artificial or prerecorded voice." Dkt. #39 at ¶4.2.

Plaintiff does not specify the cellular phone number she claims PW called in violation of § 227(b)(1)(A), a fatal defect. In addition, the Complaint makes clear that any calls Plaintiff alleges PW made to her cell phone are calls made with the consent and/or at the invitation of Plaintiff herself. *Id.* at ¶¶ 3.2-3.3. For these reasons, Count I should be dismissed.

**A. The application of Rule 8 under *Iqbal* and *Twombly* standards requires, at a minimum, that Plaintiff allege the cell phone number upon which her § 227(b)(1)(A) claim is based.**

Section 227(b)(1)(A) applies to calls made to a "telephone <u>number</u> assigned to a ... cellular telephone service." *See Strand v. Corinthian Colleges, Inc.*, No. 1:13-CV-1235, 2014 WL 1515494, at *3 (W.D. Mich. Apr. 17, 2014) (emphasis added). In *Strand*, defendants moved to dismiss a § 227(b)(1)(A) claim because the TCPA plaintiff did not allege the cell phone number at issue. 2014 WL 1515494, at *2. Defendant argued that when a § 227(b)(1)(A) claim is asserted, the pleading should allege sufficient information so a reasonable investigation into whether a TCPA violation occurred could be conducted. *Id.* The court agreed, holding that notice pleading "under *Twombly* and *Iqbal*, necessarily requires that plaintiff plead the telephone number in question to 'raise a right to relief above the speculative level.'" *Id.* at *3 *citing Twombly*, 550 U.S. at 55, 570.

*Strand*'s reasoning applies here as well. Plaintiff does not allege the cell phone number PW allegedly called. A basis for dismissal in its own right, in the alternative, Plaintiff should be

8

ordered to identify in her pleading the cell phone number upon which her claims against PW under §227(b) are based.

### B. Plaintiff consented and invited the cell phone calls alleged to have been made by PW; therefore, as a matter of law, Count I should be dismissed with prejudice.

To state and prevail on a § 227b(1)(A)(iii) claim, a plaintiff must show that the defendant: (1) made call using an ATDS; (2) the call was not made for emergency purposes: (3) the call was made without the plaintiff's prior express consent; and (4) the call was made to telephone number assigned to the plaintiff's cellular telephone services. *See e.g. Lee v. Gulf Coast Collection Bureau, Inc.*, No. 8:13-cv-2276-T-24, 2014 WL 6878760. *2 (M.D.Fla. Dec. 10, 2014). Prior express consent is an affirmative defense, not an element of a claim. *See Breslow v. Wells Fargo Bank, N.A.,* 857 F.Supp.2d 1316, 1319 (S.D.Fla.2012) ("the prior express consent exemption acts as an affirmative defense and 'the burden will be on the creditor to show it obtained the necessary prior express consent.'"). However, there is no reason not to grant a motion to dismiss when the undisputed facts conclusively establish an affirmative defense as a matter of law. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009).

The TCPA does not define "express consent." However, the Federal Communications Commission ("FCC") issued a 2008 ruling regarding the prior express consent exception in the context of debt collection:

> Although the TCPA generally prohibits autodialed calls to wireless phones, it also provides an exception for autodialed and prerecorded message calls ... made with the prior express consent of the called party. Because we find that autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the "prior express consent" of the called party, we clarify that such calls are permissible. We conclude that the provision of a cell phone number to a creditor, *e.g.,* as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt.

9

*In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991,* 2008 WL 65485, at *3 (F.C.C. Jan. 4, 2008)("2008 FCC Ruling") (footnotes omitted). Courts have concluded that providing a cell phone number to a creditor provides consent to contact the debtor with a predictive dialer. *See e.g.*, *Frausto v. IC Sys., Inc.,* 2011 WL 3704249, *2 (N.D.Ill. Aug. 22, 2011)(citing 2008 Order) (plaintiff's attempt to limit TCPA where authorized only for PayPal to contact cell phone rejected and consent found); *Mitchem v. Illinois Collecting Serv., Inc.,* No.: 09 CV 7274, 2012 WL 170968, *2 (N.D.Ill. Jan. 20, 2012) (consent found when plaintiff provided cell number to medical provider holding "the record establishes that plaintiff consented to receiving calls about the medical debt on his cell phone by giving the cell phone number to a medical provider."); *Cunningham v. Credit Management, L.P.*, no.: 3:09-cv-1497 G(BF), 2010 WL 3791104, *5 (N.D.Tex. 2010)("The Court finds that this evidence sufficiently establishes that Plaintiff provided his cellular number to Time Warner and, in doing so, consented to receiving automated and prerecorded calls...."); *Cavero v. Franklin Collection Service Inc.*, No.: 11-22630-CIV, 2012 WL 279448, *4 (S.D.Fla. 2012) ( "[T]here is no issue of fact as to whether AT&T was Cavero's creditor, and whether Cavero gave AT&T his cell phone number, Cavero provided the consent necessary under the TCPA to be called by Franklin with respect to his debt to AT&T.").

Recently the Eleventh Circuit addressed consent in *Mais v. Gulf Coast Collection Bureau, Inc.,* 768 F.3d 1110 (11th Cir. 2014). There the court held that the wife's disclosure of her husband's cell phone number on a hospital admission form was *prior express consent* to receive debt collection calls and relied on, in part, on other FCC explications of the prior express consent exception. *Mais*, 768 F.3d at 1123-1124, *citing In re GroupMe, Inc./Skype Commc'ns S.A.R.L. Petition,* 29 F.C.C. Rcd. 3442, 3447 (2014) ("the TCPA does not prohibit a caller from

10

obtained consent through an intermediary."); 2012 F.C.C. Order, 27 FCC 1830, 1839 (2012) ("[R]equiring prior written consent will better protect consumer privacy because such consent require conspicuous action by the consumer-providing permission in writing-to authorize autodialed or prerecorded telemarketing calls…"); 1992 F.C.C. Order, 7 FCC Rcd. 8752, 8769 (1992) ("[P]ersons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary."); *see also, Balschmiter v. TD Auto Fin. LLC,* No. 13-CV-1186-JPS, 2014 WL 6611008, at *11 (E.D.Wis. Nov. 20, 2014) (citing *Mais* on question of prior express consent).

The facts at bar demonstrate that Plaintiff provided her cell phone number voluntarily to PW and thus consented to being called on that cell phone. Plaintiff admitted that she wanted to identify who was sending her texts. Dkt. #39 at ¶3.2. Plaintiff answered a November 26, 2013, text from "Defendants" providing the confirmatory word "Yaz." *Id*. Plaintiff then went to a website, found a form regarding Yaz®-related injuries, and completed that form with fictional information under the alias "Gina Lola", claiming that she had suffered a deep vein thrombosis injury while taking Yaz®. *Id.* at ¶¶3.2-3.3; Exhibit A, Intake Form.[2] The Complaint establishes she completed the on line form voluntarily providing <u>an alias</u>, a <u>phone number</u>, *and* "<u>the best time to call</u>." Exhibit A. One would be hard-pressed to find any clearer and more affirmative consent to being contacted.

---

[2] The Court may consider Exhibit A because it is referenced in the Complaint and is central to the claims alleged in the Complaint, without converting the motion to dismiss to a motion for summary judgment. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680-681 (6th Cir. 2011) (noting a court may consider "exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein."). The telephone number and email address in Exhibit A have been partially redacted to protect Plaintiff's personal identifying information.

11

On November 28, 2013, Plaintiff allegedly received two calls to her cell phone, the second of which was from a PW attorney encouraging her to retain PW in connection with her Yaz® injuries. Dkt. #39 at ¶3.3. On November 29, 2013, PW further e-mailed her a *fee agreement* for her consideration. Dkt. #39 at ¶3.4. Between November 29, 2013, and December 6, 2013, Plaintiff received three calls on her cell phone from PW. *Id*. It is not accidental that Plaintiff does *not* allege that she told PW *not* to call her on her cell phone. The facts show, instead, that Plaintiff *invited calls* on the phone number she herself provided in the form, specifying *a preference to be called in the afternoons*. Therefore, as a matter of law, Plaintiff provided her express consent to the very calls she now alleges that PW made to her cell phone. As such, Plaintiff's claims against PW cannot be maintained under § 227(b) of the Act and should be dismissed.

**III.    Count II must be dismissed; Plaintiff fails to allege facts demonstrating that PW violated § 227(c); the EBR exception applies to PW's actions alleged in the Complaint; and no private right of action exists for telephone solicitations to cell phone numbers registered with the national DNC registry.**

Plaintiff alleges a violation against "Defendants" for sending two text messages and placing three telephone calls to her cell phone within a twelve month period while that telephone number was registered to the DNC registry in violation of 47 C.F.R. §64.1200(c)(2). Dkt. #39 at ¶5.2. Plaintiff does not allege what number was registered with the DNC registry or, if registered, when. The calls she alleges PW made only serve to demonstrate that the established business relationship ("EBR") exception applies to bar any liability as against PW under § 227c of the Act. *See* 47 C.F.R. § 64.1200 (f)(5). Finally, there is no private right of action for telephone solicitations to cell phone numbers registered with the national DNC registry either.

12

### A. Count II does not allege facts about the number purportedly registered with the DNC registry.

Plaintiff does not allege what cell phone number she allegedly registered with the DNC registry, nor does she allege when it was that she actually registered that number. Plaintiff also fails to allege the cell phone number on which she purportedly received texts and messages in violation of § 227(c). As such, Plaintiff has not alleged sufficient facts entitling her to relief as against PW under Count II. *See Iqbal,* 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-that the pleader is entitled to relief.").

### B. The EBR applies to the calls Plaintiff alleges PW made to her cell phone.

Section 227(c) of the Act (and the accompanying regulations at 47 C.F.R. § 64.1200(c)(2)) provide that "[n]o person or entity shall initiate any telephone solicitation to: (2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government … (emphasis added). "Telephone solicitations" are defined in § 227(a)(4) as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person[.]" *See Zelma v. Art Conway, Dialamerica Marketing, Inc., et al.*, No. 2:12-cv-00256, 2013 WL 6498548, *2 (D. New Jersey Dec. 11, 2013) (motion to dismiss § 227(c) claims granted because EBR applied). Even if a plaintiff is on the national DNC list, certain exceptions apply, such as the EBR. *See* 47 C.F.R. § 64.1200 (f)(5); *Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287, 291 (N.D. Ill. 2014) (defining the term "established business relationship" as a relationship on the basis of an inquiry, application, purchase or transaction by the recipient). An EBR is defined in the regulations as:

13

> a prior existing relationship formed by voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party.

*See* 47 C.F.R. § 64.1200 (f)(5). Here, the Complaint demonstrates that the calls Plaintiff alleges PW made to her cell phone were not only made by invitation and consent, but were subject to the EBR as well.

On November 26, 2013, Plaintiff answered a text with the word "Yaz. ®" Dkt. #39 at ¶3.2. Plaintiff went to a website, found a form regarding Yaz®-related injuries, and completed the form with fictional information under the alias "Gina Lola", claiming that she had suffered a deep vein thrombosis injury while taking Yaz®. *Id*. at ¶¶3.2-3.3. On November 28, 2013, Plaintiff allegedly answered a call on her cell phone from a PW attorney encouraging her to retain PW in connection with her Yaz® injuries. *Id*. ¶3.3. On November 29, 2013, PW e-mailed Plaintiff a fee agreement. *Id*. at ¶3.4. Between November 29, 2013 and December 6, 2013, Plaintiff allegedly received *three* calls on her cell phone from PW encouraging her to retain PW. On December 6, 2013, PW sent Plaintiff a letter stating it would not represent her. *Id*. at ¶3.4. These facts demonstrate that the alleged cell phone calls between PW and Plaintiff were in response to Plaintiff voluntarily completing a form about her alleged Yaz®-related injuries and that the interaction between PW and Plaintiff were consensual and with a view towards potential legal representation related to those injuries outlined in the intake Plaintiff admits she completed. *See In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14080-14082 (2003) (ruling that the nature of any inquiry must be such to create an expectation on the part of the consumer that a particular company will call them…by making an

inquiry or submitting an application regarding a company's products or services, a consumer might reasonably expect a prompt follow-up telephone call regarding the initial inquiry or application, not one after an extended period of time). Plaintiff <u>does not</u> allege that she instructed PW to <u>stop</u> calling her cell or that she notified PW her cell number was on the national DNC list. *See Wolfkiel*, 303 F.R.D. 287 at 291 (calls are not prohibited to persons with whom the seller has an EBR unless the recipient previously made a specific do-not-call request to the caller); *See Elkins v. Medco Health Solutions, Inc.,* No. 4:12-CV-2141 TIA, 2014 WL 1663406, at *8 (E.D. Mo. Apr. 25, 2014) (noting an EBR may be terminated by the recipient's request to terminate future communications). Plaintiff *elected* to receive the calls from PW about whether it would represent her for the claimed injuries. *Zelma*, 2013 WL 6498548, *2 (EBR applies and § 227(c) claims dismissed when plaintiff elected to receive magazine subscription, absence of payment for subscription irrelevant). However, on December 6, 2013, <u>PW terminated</u> the relationship when it sent her a letter that it would not represent her. Therefore, the EBR applies and Count II should be dismissed.

> **C. There is no private right of action for telephone solicitations to cell phone numbers registered with the DNC registry under § 227(c) or 47 C.F.R. § 64.1200(c)(2).**

The Complaint alleges PW called Plaintiff's cell phone in violation of § 227(c). Dkt. #39 ¶2.3. However, § 227(c) of the Act only authorizes the FCC to regulate solicitations to "residential telephone subscribers." *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2))(provide that "[n]o person or entity shall initiate any telephone solicitation to: (2) A <u>residential telephone</u> subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government … (emphasis added)). The TCPA is silent on telephone solicitations made to

15

cellular phone numbers. While cellular phone numbers may be registered to the national DNC registry, § 227(c) does not create a private right of action for telephone solicitation to cellular phone numbers. *See* 18 FCC Rcd. 14014, 14038 (July 3, 2003). Therefore, Count II should be dismissed.

**IV.   The Do Not Call Class is an impermissible, fail-safe class and should be stricken pursuant to Rule 12(f).**

      Plaintiff alleges a putative DNC national class defined as follows:

> All persons in the United States who received one or more than one telephone solicitation call within any 12-month period from Defendant and/or a third party acting on Defendants' behalf, after registering their telephone number on the national do-not-call registry, at any time in the period that begins four years before the filing of the original complaint to trial.

Dkt. #39 at ¶6.2. Membership in this alleged class <u>requires class members to have a successful claim against PW</u>. Thus, it is a fail-safe class and must be stricken. *Pilgrim v. Universal Health Card LLP*, 660 F.3d 943, 949 (6th Cir. 2011) (affirming Rule 12(f) motion to strike class allegations); *Zachariny v. Complete Payment Recovery Services, Inc., et al.,* no. 14-3197, 2015 WL 249853, *12 (E.D.Pa. Jan. 21, 2015) (Rule 12(f) motion to strike TCPA and FDCPA class claims granted holding they were impermissible fail safe classes).

      This Court has held that motions to strike under Rule 12(f) should be used sparingly; however, courts are required to strike pleadings for purposes of justice and when the pleading to be stricken has no possible relation to the controversy. *Anderson v. Standard Ins. Co.*, No. 3:14-CV-00051-H, 2014 WL 5366117, at *1 (W.D. Ky. Oct. 21, 2014). In putative class actions, plaintiffs may generally conduct discovery related to Rule 23's requirements; therefore, a court should only grant a motion to strike class allegations if class treatment is inappropriate on the face of the complaint. *Landsman & Funk PC v. Skinder-Strauss Assoc.*, 640 F.3d 72, 93 fn. 30 (3d Cir. 2011)(court may determine class certification before discovery when "complaint itself

16

demonstrates that the requirements for maintaining a class cannot be met"); *accord John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007). The Sixth Circuit has stricken class claims when "no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23." *Pilgrim v. Universal Health Card LLP*, 660 F.3d at 949; *See, e.g. Randleman v. Fidelity Nat. Title Ins. Co.,* 646 F.3d 347, 352 (6th Cir. 2011) (fail-safe class "shields the putative class members from receiving adverse judgment. Either the class members win, or by virtue of losing, they are not in the class and therefore, not bound by the judgment.").

Here, Plaintiff's DNC class is a prohibited fail-safe class. It is a fail-safe class because one is a member of this putative class *only* if she registered her number with the national DNC registry *and* received a telephone solicitation from or on behalf of PW. *See* Dkt. #39 at ¶6.2. Put another way, one is a class member only if she is entitled to recover from PW under 47 C.F.R. §64.1200(c)(2). However such a result is prohibited because it would fail to provide final resolution of the claims of all class members. *Zachariny*, at *12. Therefore, the DNC national class should be stricken with prejudice from the Complaint.

WHEREFORE, Defendant, Parker Waichman LLP, respectfully requests this Court grant its Motion and enter an order dismissing Plaintiff's First Amended Complaint with prejudice and striking the National Do Not Call Class in Paragraph 6.2 with prejudice.

Respectfully submitted,

By: *s/Corinne C. Heggie*_____
Corinne C. Heggie
One of the Attorneys for Defendant,
Parker Waichman LLP

David M. Schultz (IL #6197596)
*Pro Hac Vice*
Corinne C. Heggie (IL #6276412)
*Pro Hac Vice*
Hinshaw & Culbertson LLP
222 No. LaSalle St., Ste. 300
Chicago, IL 60601
312-704-3000
dschultz@hinshawlaw.com
cheggie@hinshawlaw.com

M. Thurman Senn (KBA #82343)
Morgan & Pottinger, P.S.C.
601 West Main Street
Louisville, KY 40202
502-560-6750
mts@morganandpottinger.com

18