UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| ANNE-MARIE NEWBOLD,<br><br>　　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>PARKER WAICHMAN LLP and JOHN DOES 1-10,<br><br>　　　　　　　　　　　Defendants. | Case No.  3:14-cv-00733 DJH<br><br>PLAINTIFF ANNE-MARIE NEWBOLD'S RESPONSE IN OPPOSITION TO MOTION TO STAY DISCOVERY OR ELSE OBTAIN A PROTECTIVE ORDER |

## I.  INTRODUCTION:

Defendant Parker Waichman LLP ("Parker Waichman") is a law firm which violated the Telephone Consumer Protection Act by soliciting new clients through telemarketing telephone calls[1] which violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Plaintiff Anne-Marie Newbold is one of numerous consumers who received these illegal telephone calls from Parker Waichman or its telemarketing agents. Accordingly, Ms. Newbold initiated a putative class action to hold Parker Waichman accountable for its illegal telemarketing practices by which it solicited new clients and for injunctive relief so that the practices will be discontinued.

Parker Waichman filed a motion to dismiss Ms. Newbold's complaint or else to strike one of the two class definitions she alleged. *See* Dkt. No. 49. Ms. Newbold filed a response in opposition which details why Parker Waichman's motion should be denied. *See* Dkt. No. 55.

---

[1] "Calls" means both text and voice messages. *See*, *e.g.¸ Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("[W]e hold that a text message is a "call" within the meaning of the TCPA."). Plaintiff received both times of unwanted solicitations from Parker Waichman and its telemarketing agents. *See infra.*

1

Notwithstanding the merit of Ms. Newbold's class action complaint, Parker Waichman now seeks to deprive Ms. Newbold of any ability to advance her claims or the claims of the classes she seeks to represent. Parker Waichman seeks to avoid having to respond to Ms. Newbold's December 2014 discovery requests. Parker Waichman seeks to obstruct Ms. Newbold's acquisition of evidence from third-parties who have no obligation, yet, to preserve highly relevant information. And failing in those efforts, Parker Waichman seeks a protective order that, as a practical matter, will make it impossible for Ms. Newbold to establish either the size or scope of the classes, identify class members, or prove her claims against Parker Waichman.

Ms. Newbold respectfully asks the Court to reject Parker Waichman's motion. Instead, as permitted by Rule 26(c)(2), Ms. Newbold requests that Parker Waichman be ordered to provide and permit all of the discovery which Parker Waichman seeks to withhold, and likewise order Parker Waichman not to interfere with or attempt to block third party discovery.

## II.   FACTS ALLEGED IN THE COMPLAINT:

Parker Waichman, the only named defendant, is a large, New York-based law firm. Dkt. No. 39 ¶ 1.1. The other, unnamed defendants include marketing agents and telemarketers. *Id.* ¶ 1.2. Working together, Parker Waichman and these marketing agents and telemarketers send uninvited telemarketing voice calls and text messages to Ms. Newbold and many consumers like her. *E.g.*, *see id.* ¶¶ 3.1 – 3.6, 6.1 – 6.8.

In April 2013, Parker Waichman and its marketing agents and telemarketers began making uninvited telemarketing voice calls to Ms. Newbold's cellular telephone using pre-recorded messages. *See* Dkt. No. 39 ¶ 3.5. Parker Waichman and its marketing agents and telemarketers were making these automated calls to Ms. Newbold because Parker Waichman was trying to solicit clients who may have personal injury claims arising from the use of certain birth control medications. *Id.* ¶ 3.5; *cf. id.* ¶¶ 3.3 – 3.4. During April 2013 alone, Ms. Newbold

received at least three of these pre-recorded telemarketing voice messages from Parker Waichman and its marketing agents and telemarketers. *Id.* ¶ 3.5.

In November 2013, Parker Waichman and its marketing agents and telemarketers began sending uninvited telemarketing text messages to Ms. Newbold's cellular telephone. Dkt. No. 39 ¶¶ 3.1 – 3.2. On November 11, 2013, Parker Waichman and its marketing agents and telemarketers tried to solicit Ms. Newbold as a client of Parker Waichman by stating, "Have you or a loved one been injured or hospitalized because of YAZ, Yasimin or Ocella? TEXT help with our due compensation." *Id*. ¶ 3.1. Hearing no response, Parker Waichman and its marketing agents and telemarketers on November 26, 2013 tried again to solicit Ms. Newbold as a client of Parker Waichman by sending Ms. Newbold a text message which stated, "WE HAVE A FREE WEBSITE TO HELP YOU GET FREE HELP AND GET A CASH SETTLEMENT. LET US HELP. Go to our website at http://makethempay2013/." *Id*. ¶ 3.2.

After receiving the November 26, 2013 telemarketing text message, Ms. Newbold responded "[t]o determine who was responsible for sending the text messages". *See* Dkt. No. 39 ¶ 33. Ms. Newbold succeeded. *See id.* On November 28, 2013 (Thanksgiving Day), Parker Waichman attorneys began making the first of five additional telemarketing telephone calls to Ms. Newbold's cellular telephone. *Id.* In all of these calls, Parker Waichman attorneys encouraged Ms. Newbold to retain the legal services of Parker Waichman to pursue a Yaz personal injury claim. *Id*. Thus, by responding to one of the automated telemarketing text messages she received, Ms. Newbold learned that Parker Waichman was responsible for the Yaz-related telemarketing voice calls and text messages that she had received on her cellular telephone. *See id.* ¶¶ 3.2 – 3.3.

The telemarketing practices of Parker Waichman and its marketing agents and telemarketers create two classes of over one hundred consumers each receiving multiple

3

telemarketing voice calls and text messages like the ones received by Ms. Newbold. *See* Dkt. No. 39 ¶¶ 6.1 – 6.8.

### III. FACTS OBTAINED WITH THE LIMITED DISCOVERY TO DATE:

Parker Waichman describes itself on its website as "A National Law Firm…Recognized as America's Leading Personal Injuries" with offices in New York, Long Island, New Jersey, Washington D.C. and Florida (www.yourlawyer.com). It specializes in many areas of practice, including defective drugs and lists Yaz[2] as one such drug.

On October 30, 2013, Gary Falkowitz, Managing Attorney for Parker Waichman LLP signed a contract with Forever Green Marketing LLC ("Forever Green") of Vista, California entitled "Lead Purchase Agreement", attached as Exhibit A to the Declaration of Rob Williamson in Support of Opposition to Defendant Parker Waichman's Motion to Stay Discovery, or, Alternatively for a Protective Order Pursuant to Rule 26(c) (Dkt. No. 54) ("Williamson Decl."). In that Agreement, Forever Green was given an "exclusive" opportunity to provide "Yaz/Yasmin/Ocella" leads to Parker Waichman who in turn agreed to pay Forever Green $5,000 for each signed case.

In the Agreement, Parker Waichman directed certain questions that were to be asked of potential clients, as follows:

Did you suffer a venous clot through a Pulmonary Embolism, Deep Vein Thrombosis or Stroke while using Yaz? (Answer must be "yes")

Did you suffer this injury prior to April 2012 (Answer must be "yes")

---

[2] Yaz, a brand of oral hormonal contraceptive containing drospirenone that may also be used to treat premenstrual dysphoric disorder (PMDD). *See* http://en.wikipedia.org/wiki/Yaz.

Do you currently have an Attorney regarding a case against the makers of Yaz? (Answer must be "no")

The Agreement provides that "…the Company [Forever Green] shall use reasonably commercial efforts to supply Buyer [Parker Waichman] with Leads." Nowhere in the agreement is there any language or terms that specify how Forever Green is to supply Parker Waichman with Leads.

The Lead Purchase Agreement was provided to Plaintiff by Parker Waichman while this matter was still pending in the Western District of Washington, and then again produced pursuant to a subpoena issued to Forever Green, a copy of which is attached as Exhibit B to the Williamson Decl. Attached as Exhibit C is the Declaration of Forever Green's owner, Alan Silverstein, which establishes that the records produced are a complete set of the documents requested in the subpoena, and are being produced as they are kept in the normal course of business.

The records produced by Forever Green include emails and or forms regarding various persons who gave their name and other information about their use of Yaz, Exhibits D through I of Williamson Decl. The emails include one concerning Plaintiff, dated November 28, 2013, (Exhibit E) in which she identified herself as "gina lola".

The medical information on the emails in question include answering what birth control the individual was using, whether they or a loved one has suffered a Deep Vein Thrombosis, Pulmonary Embolism, Blood Clot, Death, Heart Attack or Stroke, and the date the person started using the drug. Further information was provided within the "Comments" section that varied from each potential claimant. While the information on the email/form relates to the potential claimant, it appears it may have been completed by one of the marketers retained by Forever Green as there are references to Parker Waichman (Parker Waichman" such as "Tried to 3-way

5

to Parker Waichman but Parker Waichman didn't answer" (Exhibit D). It appears that all of the medical information was given voluntarily by each person to the marketer without any direction that the information was confidential.

While Forever Green and others acting on its behalf sought Leads for Parker Waichman, Mr. Falkowitz was in frequent contact with the marketers. On November 21, 2013, Mr. Falkowitz (Identified in the email as Managing Attorney, New Case Unit) wrote Bob Bleau regarding the cases that had been referred to Parker Waichman (Exhibit J). He followed up on December 6, asking for an update on Yaz leads (Exhibit K), and on December 9, 2013 advised Mr. Bleau that the leads referred so far to Parker Waichman had been rejected because "The SOLs were gone given the date of injury and the State that each of the claimants lived in" (Exhibit L). A marketer was in touch with Mr. Falkowitz about another possible case which Mr. Falkowitz rejected on November 11, 2013 (Exhibit M). On November 21, 2013 Mr. Falkowitz requested that the claimant's residential state be included in any emails sent to his firm. (Exhibit N) On November 22, 2013 Mr. Falkowitz exchanged emails with Bob Bleau regarding payment for leads and Parker Waichman having 75 days to determine whether to accept a lead (Exhibit O). On the same day there were emails exchanges regarding transferring cases and a particular client. (Exhibit P).

## IV. The Discovery Sought by Plaintiff

The limited information that can be gleaned from the records provided by Forever Green as well as the allegations of the complaint itself clearly demonstrate the need for extensive discovery in order to establish both liability and the grounds for class certification. Discovery will focus on the following:

1. The names and records of other vendors which Parker Waichman or its contractors used to contact potential clients (leads) for Yaz and other litigation;

6

2. What supervision and monitoring of the vendors was provided by Parker Waichman;

3. Whether Parker Waichman knew of Rules of Professional Responsibility for the various states where clients were directly contacted by its marketers;

4. The names, addresses and other identifying information of all potential clients who were contacted by vendors or others acting for the benefit of Parker Waichman;

5. How potential clients were identified to be called;

The discovery heretofore sought by Plaintiff was served on December 9, 2014. It is attached to the Williamson Decl. as Exhibits Q and R.

V. **ARGUMENT**

A. **Summary**

In this class action, Parker Waichman seeks to limit all discovery to facts related to the class representative only. This request, if granted, would convert this case from a class action to an individual claim by Plaintiff and effectively prevent her or any other person seeking to represent a class from seeking class certification. The motion for protective order is, in essence, a motion to prevent class treatment of the claims of numerous persons who cannot realistically bring individual claims against Parker Waichman.

While Parker Waichman raises concerns about medical records, privacy and privilege, none of those concerns are addressed by the relief it seeks. This case is about illegal marketing by Parker Waichman who seeks clients it can represent and from whose cases it can earn fees. Parker Waichman pays thousands of dollars to telemarketers, lead aggregators, lead generators and others as bounties for every client it signs up. It is not a case about privilege and medical records. Plaintiff seeks discovery about Parker Waichman's marketing strategies, its retention and supervision of third parties, and the identities of persons contacted illegally by or at the behest of Parker Waichman.


Because Parker Waichman has answered no class wide discovery, Plaintiff has limited information regarding its marketing practices.  Parker Waichman has to date only provided a few documents relating to the Plaintiff only and has nt answered the outstanding interrogatories as to Plaintiff, much less the class.  There are potentially tens of thousands of persons who are class members and whose identities should be revealed so that their claims can be pursued.  Plaintiff has no interest in private or privileged information regarding any class member; she seeks only to know the identities of persons were the recipients of the improper solicitations made at Parker Waichman's request, how they were contacted, and whether Parker Waichman had consent to make such contacts.

The documents provided by Forever Green illustrate some of the practices used by Parker Waichman to obtain clients.  It hired Forever Green to provide leads for Yaz cases and agreed to pay $5,000 for each accepted client.  Those persons who responded to the calls did voluntarily provide some medical information to the marketers.   There are no privileged communications in the documents in the Forever Green documents.    To the extent discovery responses may include medical or privileged information that Parker Waichman wants kept confidential, a protective order can be entered.  Marketers for Parker Waichman may have contacted thousands of leads or more who did not respond or otherwise indicate any interest in the solicitation.  For those persons, of course, there are not issues of confidential medical records or privilege.  Defendant cannot prevent the discovery of relevant information required to pursue the remedies for all class members because a very small percentage of those in the class may have disclosed medical or privileged information.

### B. Discovery Should Not be Stayed Pending Resolution of the Motion to Dismiss

This matter was initially filed in September 2013. Now, over six months later, Parker Waichman seeks to stay discovery. To date it has only provides a limited number of documents regarding Plaintiff only. It has not answered interrogatories and produced documents. Parker Waichman's Motion to Dismiss is wrong on both the facts and law and it should not be granted. Discovery should proceed.

### C. The Law Strongly Favors Plaintiff's Efforts to Obtain Discovery and the Motion for Protective Order Should be denied.

The purpose of discovery is to provide a mechanism for making relevant information available to the litigants. "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor,* 329 U.S. 495, 507 (1947). Federal courts have long recognized that "liberal discovery rules best serve justice by enabling all parties to access the maximum amount of information on with which to prepare their cases." *Barton v. Cascade Reg'l Blood Services*, C06-5644 RBL, 2007 WL 2288035, *2 (W.D.Wash. Aug. 6, 2007), *citing Taylor v. Illinois*, 484 U.S. 400, 412 n. 16 (1988).

"Litigants 'may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.'" *Safouane v. Hassett*, C00-0621 JCC, 2009 WL 927726, *2 (W.D.Wash. Apr. 1, 2009), *quoting Surfvivor Media, Inc. v. Survivor Prods.,* 406 F.3d 625, 635 (9th Cir.2005). "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Id.*, *2, quoting Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.,* 175 F.R.D. 646, 650 (C.D.Cal.1997). Ultimately, "[d]iscovery being broad in scope and biased toward disclosure, requests need only be 'reasonably calculated to lead to the discovery of admissible evidence.'" *Daimler Truck N. Am. LLC v. Younessi*, 70 Fed. R. Serv. 3d 1374, 2008 WL

2519845, *2 (W.D.Wash. June 20, 2008).

In this context, Parker Waichman faces a heavy burden of proof if it seeks to block discovery with a protective order; "Under the liberal discovery principles of the Federal Rules defendants [are] required to carry a heavy burden of showing why discovery [should be] denied." *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir.1975) (reversing a protective order because defendants had not met the high factual burden required for its entry). That a defendant is burdened by discovery is insufficient to justify a protective order, instead "[t]he facts must show that a clearly defined and serious injury will result from the discovery sought." *Sims v. Lakeside Sch.,* C06-1412RSM, 2007 WL 4219347 (W.D.Wash. Nov. 28, 2007).

The Federal Rules of Civil Procedure favor discovery so much over protective orders that they state, "If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery." Fed.R.Civ.P. 26(c)(2). Because Parker Waichman fails to provide sufficient grounds to obtain a protective order, the Federal Rules of Civil Procedure are served best by ordering Parker Waichman to fully answer, without objection, the discovery served on it on December 9, 2014, without further delay.

Parker Waichman claims in its motion that "The Complaint alleges Parker Waichman made calls to her cell phone between November 28, 2013 and December 6, 2013 after she accessed a website and voluntarily completed a form under the alias "Gina Lola" regarding injuries resulting from taking "Yaz®." Defendant does not admit that the "calls" to her cell phone were, in fact, illegal text messages, and omits allegations in the First Amended Complaint that Parker Waichman also made automate prerecorded calls to Plaintiff in April 2013. Defendant likewise neglects to mention that it and its marketing agents made similar calls to numerous other consumers throughout the country.

### 1. The Discovery of Plaintiff Does Not Seek Confidential Medical Information; To the Extent such Information may Arise from Discovery, it can be Protected Without Prohibiting Discovery.

Parker Waichman did not object to the subpoena served on Forever Green Marketing, nor has it sought to "protect" the information that the subpoena produced. It is unclear why Parker Waichman now seeks the protective order in question. Be that as it may, the concern about disclosure of "personal identifying, health and reproductive information of third parties" is not well taken for many reasons:

a. Parker Waichman argues Plaintiff's Discovery will force it to disclose the "personal identifying, health and reproductive information of third parties". This claim is simply wrong. Plaintiff seeks the names and identifying information who were illegally contacted by Parker Waichman, not their medical records. If Parker Waichman has the information about persons who were improperly contacted, it can reveal it without also providing the so-called confidential medical information.

b. Parker Waichman has not submitted a proposed order with its motion, but it does not expressly seek to prevent Plaintiff from seeking relevant disco very from third parties. After filing its motion, it appears now to seek to place such limitations. The limited discovery provided by Forever Green does not show that confidential medical information was provided. Indeed, the information was voluntarily provided by potential clients to marketers, hardly evidence that the information was considered confidential. As noted herein, however, such information can be kept confidential pursuant to the normal protective order entered in litigation all the time.

c. Virtually all of the information sought by Plaintiff will not involve confidential information. The overwhelming number of those persons illegally contacted by Parker Waichman's bounty hunters undoubtedly ignored the texts sent or the robo-

11

    calls placed. It is those persons who have claims, along with the few who may have responded. The production of call records to identify class members is both necessary and proper.

d. Not a single Interrogatory propounded by Plaintiff seeks medical or any other confidential information. Parker Waichman misleads the Court when it claims Interrogatories 2-13 seek that information.

e. Likewise not a single Request for Production seeks the confidential information in question. Parker Waichman simply lists every single Request for Production as seeking that information without any analysis of the individual requests. Review of the Requests demonstrates that Parker Waichman either has not reviewed them or simply seeks to conflate the Request with a request for medical records which Plaintiff does not make.

f. All of the briefing and argument of Parker Waichman regarding the confidentiality of medical records, the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. §1320d and 45 CRF Parts 160, 164 is simply not applicable to this case. Plaintiff does not seek medical records and does not require Parker Waichman to produce any. *In re Knoxville News-Sentinel Co.*, 723 F.2d 470 (6th Cir. 1983), and other cases cited by Parker Waichman, are likewise not applicable to this matter.

### 2. Plaintiff Does not Seek Privileged Information

Parker Waichman is again wrong about what is sought by Plaintiff. She only wants information about persons that Parker Waichman illegally contacted. She does not seek privileged information or communications. If Parker Waichman now has a client that was the

result of an illegal communication with that lead, it need only provide the name and other identifying information.[3] Such information is not privileged.

### 3. Discovery Regarding Parker Waichman's Dealings with Third Parties is Necessary and Relevant

Parker Waichman mistakenly argues that class discovery can only be limited to a two week period in November 2013. It ignores that allegation that it also robo-called her in April 2013. Moreover, the allegations cover misconduct by defendant as to a class of persons who were illegally contacted within the statutory four year period authorized by the Telephone Consumer Protection Act. There is no evidence that Parker Waichman only engaged in the illegal conduct in November 2013, and it cannot redefine the class as those contacted in the two weeks in November.

Evidence of Parker Waichman's marketing strategies is critical to class certification and the identification of class members. As Parker Waichman itself admits, "In this technology age, law firms hire companies for marketing purposes." (Motion, page 2). How many companies did Parker Waichman hire, how may persons were contacted, illegally and, at least in states like Kentucky, unethically by agents hired to make direct contacts with potential clients? How did Parker waichman supervise these companies, or direct their efforts. How were leads developed? Surely Parker Waichman must disclose the companies it has hired to solicit leads it could develop into clients.

### 4. Delaying Discovery Would Actually Deny Plaintiff Necessary Discovery

Plaintiff attempted to serve subpoenas upon three third-parties who were telemarketing agents of Parker Waichman and Forever Green. *See* Dkt. Nos. 59-61. However, Parker

---

[3] It may be that were someone who was illegally contacted by Parker Waichman and has become a client may not wish to participate in the class action. That is a different matter and can be addressed with notice to the class of the action and the right to opt-out of it.

13

Waichman insists that its pending motion for a protective order prohibits Ms. Newbold from obtaining potential evidence through these subpoenas. In fact, Parker Waichman sent a letter to the subpoenaed parties which (a) asserted that no response was necessary and (b) misstated the nature and scope of Ms. Newbold's complaint. *See Williamson Decl.,* Exhibit S; *cf.* Dkt. Nos. 39 and 55. As a consequence, Parker Waichman's obstructionism and delaying tactics wrongfully increase the likelihood that relevant evidence to matter of class certification and to Parker Waichman's ultimate liability to the class may be lost if these third-parties do not make affirmative, timely efforts to preserve and disclose this evidence. Parker Waichman's conduct illustrates its fear of what third party records will show about its extensive and unlawful marketing program.

It is axiomatic that justice delayed is justice denied. This holds true for discovery, too. For discovery delayed increases the risk that important documents might be lost, destroyed, or otherwise misplaced. Therefore, Ms. Newbold respectfully asks the Court to reject all of Parker Waichman's attempts to delay or limit discovery in this matter.

## VI.    CONCLUSION:

Parker Waichman's motion presents no good reason to delay or deny discovery sought by Ms. Newbold on her own behalf and on behalf of the class which seeks to represent. Therefore, Ms. Newbold respectfully asks the Court to reject Parker Waichman's motion. Instead, as permitted by Rule 26(c)(2), Ms. Newbold requests that Parker Waichman be ordered to provide and permit all of the discovery which Parker Waichman seeks to withhold, and likewise order Parker Waichman not to interfere with or attempt to block third party discovery.

RESPECTFULLY SUBMITTED:  March 26, 2015

    */s/   Rob Williamson*
Rob Williamson, WSBA #26759
*Admitted Pro Hac Vice*
**WILLIAMSON & WILLIAMS**
2239 West Viewmont Way West
Seattle, Washington 98199
Tel: (206) 466-2685
Email: rob@williamslaw.com

John E. Spainhour, KBA 66510
Professional Building, Suite One
200 S. Buckman Street
Shepherdsville, KY 40165
Tel: (502) 543-2218
Fax: (502) 955-7000
Email: john@gsatty.net

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on today's date, I am serving a copy of the foregoing document and all referenced attachments upon each of the parties via electronic service through the Court's ECF system in accord with LR 5.5.

RESPECTFULLY SUBMITTED: March 26, 2015

>*/s/ Rob Williamson*
>Rob Williamson, WSBA #26759
>*Admitted Pro Hac Vice*
>**WILLIAMSON & WILLIAMS**
>2239 West Viewmont Way West
>Seattle, Washington 98199
>Tel: (206) 466-2685
>Fax: (206) 535-7899
>Email: rob@williamslaw.com
>
>Attorneys for Plaintiff