# EXHIBIT A

# Forever Green Marketing LLC

2298 Alta Vista Drive
Vista, CA 92084
760-536-3876

## Lead Purchase Agreement

**Invoice # 03527**  **Invoice Date: 10/25/2013**

**Payable To: Company**
Forever Green Marketing LLC
2298 Alta Vista Drive
Vista, CA 92084
760-536-3876

**Client: Buyer**
Parker Waichman LLP
6 Harbor Park Drive
Port Washington, New York 11050
516-723-4614, 516-723-4714 Fax

**Order Details:**
- Lead Type: Yaz/Yasmin/Ocella    Exclusive __x__ Non-Exclusive ____
- Price: $5,000.00 per signed case
- Qty: Open ended contract with a maximum of 20 Qualified YAZ Leads per month
- Buyer will provide weekly sales reports
- Buyer will accept or reject the lead within 75 days of receipt of lead. If Buyer keeps the lead beyond 75 days it will be deemed qualified and Buyer will pay Company in full for that lead.
- If Buyer rejects the lead they will have no more right to work the lead, nor can they assign or outsource it to another firm without paying the company in full for the lead.
- Buyer will pay Company on all signed and approved leads at the end of each week.
- Special Order Arrangements: Leads will be sent per consignment and payment will be due only upon signed case and paid on a weekly bases.

**Qualifiers for Accepted Leads:**
- Did you suffer a venous clot through a Pulmonary Embolism, Deep Vein Thrombosis or Stroke while using Yaz? (Answer must be "yes")
- Did you suffer this injury prior to April, 2012 (Answer must be "yes")
- Do you currently have an Attorney regarding a case against the makers of Yaz? (Answer must be "no")

**Total Amount Due: $ _____** (to be determined on a weekly basis)

**Please Remit ALL Payments to:**
- Wells Fargo Bank
- **Forever Green Marketing, LLC**
- ABA # 121000248
- Acct # 2000038228108

Buyer Name Here: **Gary P. Falkowitz**

Signature _/s/ Gary P. Falkowitz_____ Title, Managing Attorney   Date 10/30/13

*Forever Green Marketing LLC All rights reserved.*

THIS LEAD PURCHASE AGREEMENT (THE "AGREEMENT") IS ENTERED INTO, AS OF THE DATE OF YOUR ACCEPTANCE, BY AND BETWEEN FOREVER GREEN MARKETING LLC, (THE "COMPANY") AND YOU (THE"BUYER"). BY AGREEING TO THE TERMS SET FORTH HEREIN YOU ATTEST THAT YOU HAVE HE AUTHORITY TO MAKE THIS AGREEMENT ON BEHALF OF BUYER. ACCORDINGLY, THE COMPANY AND BUYER JOINTLY AGREE TO THE FOLLOWING TERMS AND CONDITIONS:

1. **SERVICES.** Per the terms of this Agreement, the Company shall use commercially reasonable efforts to supply Buyer with Leads pursuant to the terms of this Agreement.

2. **DELIVERABLES.**
   - A "**Lead**" shall be the contact information for a potential customer (whether or not such potential customer becomes an actual customer of Buyer).
   - For any exclusive Lead provided to Buyer, the Company may sell or otherwise dispose of such exclusive Lead to Buyer only. All leads that don't meet criteria of Buyer will be replaced with another lead without exception unless otherwise agreed upon in writing.

3. **PAYMENT.**
   - Buyer shall pay the Company the applicable Lead Price, as selected by Buyer via the payment method specific in this Agreement.
   - Unless specified otherwise in writing the Company may invoice Buyer weekly, requesting payment of signed cases.
   - The Company reserves the right to withhold any Leads or its performance under this agreement if the Company has not been paid in accordance with the terms set forth herein.

4. **BUYER'S REPRESENTATIONS & COVENANTS; INDEMNIFICATION.**
   - Buyer represents and warrants that it has full power, right and authority to enter into and carry out its obligations and grant the rights and licenses under this Agreement and that this Agreement constitutes a valid and binding obligation of the Buyer, enforceable against Buyer in accordance with its terms.
   - Buyer shall ensure that all Leads (and all corresponding underlying Lead information) provided hereunder are used, contacted (via direct mail, email or telephone), maintained, and accessed by Buyer and/or Buyer's affiliates in compliance with applicable law, including without limitation, the Telemarketing Sales Rule (as amended), the Telephone Consumer Protection Act of 1991, and the CAN-SPAM Act of 2003.
   - Buyer: (a) represents and warrants that it has all applicable licenses, applicable insurance (including, without limitation, Workers Compensation and Commercial General Liability Insurance), certifications and accreditation, required to perform the work intended for the Leads and (b) shall bear the obligation to make all filings and obtain and maintain any and all necessary and/or applicable governmental approvals or licenses relating to Buyer's business and for the use of the Leads in all such jurisdictions.
   - Buyer hereby agrees to defend and indemnify the Company against, and hold the Company harmless from, any loss, claim, cost, liability, suit, judgment or expense (collectively, "***Claims***"), including court costs and reasonable fees of attorneys and other professionals, arising out of or in connection with any third party Claim arising from: (a) a breach of this Agreement by Buyer, its agents, employees, subsidiaries and/or affiliates for any Lead provided by the Company.

5. **DISCLAIMER.** EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES SET FORTH IN THIS AGREEMENT, THE COMPANY PROVIDES NO ADDITIONAL WARRANTIES REGARDING THE LEADS AND THE COMPANY'S SERVICES OR THAT THE LEADS AND THE COMPANY'S SERVICES WILL RESULT IN ADDITIONAL BUSINESS OR REVENUE TO BUYER OR BUYER'S AFFILIATES. THE PROVISIONS OF

THIS SECTION 5 ARE AN ESSENTIAL ELEMENT OF THE BENEFIT OF THE BARGAIN REFLECTED IN THIS AGREEMENT.

6. **INTELLECTUAL PROPERTY.** The Company hereby grants to Buyer for the term of this Agreement a non-exclusive, non-transferable, limited license to use the Leads for purposes of contacting and soliciting such potential consumers about Buyer's products/services only. Buyer shall have no rights to grant sublicenses or transfer the Leads without the prior express written approval of the Company. For the avoidance of doubt, the Leads are for the benefit of the Buyer and Buyer shall not transfer any lead to a third party without the prior express written approval of the Company. Such license shall terminate immediately upon termination of this Agreement for any reason.

7. **PAYMENT AUTHORIZATION.** Buyer agrees to the payment Conditions Company selects. Buyer acknowledges and accepts method of payment by signing this agreement unless otherwise agreed upon in writing by Company.

8. **TERMINATION.** This Agreement may be terminated upon thirty (30) days written notice to the other party; however, any termination shall not relieve the parties of any obligation accruing prior to the effective termination date. For the avoidance of doubt, Buyer shall pay the Company for any contracted Leads during the termination notice period. Except as otherwise provided herein, termination of this Agreement shall terminate all further rights and obligations of the Company and Buyer hereunder provided that if such termination is based on a breach by a party, hereto, the other party shall be entitled to pursue any and all rights it has to redress such breach in law or equity. Except as set forth herein, the provisions as set forth in Sections 4, 5, 7 and 9 herein shall survive the termination and expiration of this Agreement.

9. **MISCELLANEOUS.**
   - *Independent Contractor.* The relationship between the Company and Buyer established by this Agreement is that of independent contractor and shall each conduct its respective business at its own initiative, responsibility and expense. Furthermore, the parties each hereby acknowledge that this Agreement embodies the justifiable expectations of sophisticated parties derived from arm's-length negotiations.
   - *Arbitration.* Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in North County, CA before one arbitrator. The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules. Judgment on the Award may be entered in any court having jurisdiction. This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.
   - *Limitation of Liability.* EXCEPT IN CONNECTION WITH AN OBLIGATION OF INDEMNIFICATION HEREIN AND TO THE FULLEST EXTENT PERMITTED BY LAW, EACH PARTIES' AGGREGATE LIABILITY TO THE OTHER PARTY AND ALL THIRD PARTIES, INCLUDING ATTORNEY'S FEES, IN CONNECTION WITH THIS AGREEMENT SHALL NOT EXCEED AN AGGREGATE LIMIT OF THE TOTAL SUM OF LEAD FEES ACTUALLY PAID TO THE COMPANY BY BUYER PURSUANT TO THE TERMS OF THIS AGREEMENT IN THE THREE (3) MONTHS PRECEDING THE CLAIM GIVING RISE TO ANY SUCH LIABILITY, REGARDLESS OF THE LEGAL THEORY UNDER WHICH SUCH LIABILITY IS IMPOSED. EXCEPT IN CONNECTION WITH AN OBLIGATION OF INDEMNIFICATION HEREIN AND TO THE FULLEST EXTENT PERMITTED BY LAW, IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY CONSEQUENTIAL, INDIRECT, SPECIAL, INCIDENTAL, PUNITIVE DAMAGES, OR LOST PROFITS, REGARDLESS OF THE FORM OF ACTION AND

REGARDLESS OF THE LEGAL THEORY UNDER WHICH SUCH LIABILITY IS IMPOSED, EVEN IF EITHER PARTY IS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES AND EVEN IF THE DAMAGES WERE FORESEEABLE. NO ACTION, SUIT OR PROCEEDING SHALL BE BROUGHT AGAINST COMPANY PURSUANT TO OR BASED ON THIS AGREEMENT MORE THAN ONE (1) YEAR AFTER THE EARLIER OF (A) THE DATE OF LAST PROVISIONING OF LEAD SERVICES OR (B) THE TERMINATION OF THIS AGREEMENT.

- *Entire Agreement.* This Agreement contains the entire agreement between the parties and supersedes all previous agreements and proposals, oral or written, and all negotiations, representations, warranties, conversations, or discussions between the parties related to the Company's Lead services. Buyer acknowledges it has not relied on any representations or statements by the Company not included in this written Agreement. The parties hereto have voluntarily agreed to define their rights, liabilities and obligations respecting the Company's services exclusively in contract pursuant to the express terms and provisions of this Agreement and the parties hereto expressly disclaim that they are entitled to any remedies not expressly set forth in this Agreement.

- *Amendment.* This Agreement may be amended and revised in a writing signed by both parties (which may include, without limitation, email). From time to time, the Company may update or revise this Agreement. Buyer's continued purchase of Leads constitutes acceptance of these changes.

- *Waiver.* The failure of any party hereunder to insist upon strict performance of any terms or provisions of this Agreement shall not be construed as a waiver or relinquishment for the future of any such terms or provisions. Rather such terms and provisions shall continue and remain in full force and effect. No waiver shall be deemed to have been made unless the waiver is made in writing and signed by the party making the waiver.

- *Intent to Be Bound.* BUYER ACKNOWLEDGES THAT BUYER'S ELECTRONIC SUBMISSION CONSTITUTES BUYER'S AGREEMENT AND INTENT TO BE BOUND BY THE TERMS HEREIN.

- *Severability.* If any term or provision is held to be unenforceable or invalid to any extent, the remainder of this Agreement shall not be affected and each other term or provision of this Agreement shall be valid to the fullest extent permitted by law.

Forever Green Marketing LLC    Parker Waichman LLP

Signed *alan silverstein* Date 11/1/13    Signed _____ Date 10/30/13

*Forever Green Marketing LLC. All rights reserved.*